# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| CHRISTOPHER O'KEEFE; JONI O'KEEFE, | CASE NO. 13cv0744 JM(JMA) |
|---|---|
| Plaintiffs, | ORDER DENYING MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| ALLSTATE INDEMNITY COMPANY, | |
| Defendant. | |

Defendant Allstate Indemnity Company ("Allstate") moves for summary judgment on whether any policy benefits are owed to Plaintiff Christopher O'Keefe ("O'Keefe"). Plaintiffs Christopher O'Keefe and Joni O'Keefe (collectively "Plaintiffs") oppose the motion. Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for decision without oral argument. For the reasons set forth below, the court denies the motion for summary judgment.

## BACKGROUND

On March 28, 2013, Plaintiffs commenced this diversity action by alleging three claims for relief: (1) breach of the insurance contract at issue; (2) breach of the covenant of good faith and fair dealing; and (3) negligent misrepresentation. Plaintiffs' claims arise from the following generally described conduct.

Prior to November 27, 2010, O'Keefe had been a practicing lawyer. After suffering injuries in two car accidents, he "had to close down his law practice."

(Compl. ¶15). His driver's license was also suspended due to the seriousness of the injuries. For "three to four years before November 27, 2010, . . . Christopher could not drive a vehicle with a suspended license." (Compl. ¶16). In the fall of 2010, O'Keefe "was told by one of his treating neurologists that his medical condition was such that he could begin driving again." (Compl. ¶17). On November 27, 2010, Plaintiffs purchased a new Mini Cooper for $35,540, making a down payment of $8,000 and financing the remainder.

On December 14, 2010, Plaintiffs met with Mallory Lee ("Lee"), a licensed casualty broker-agent with the Ryan Hartwigsen Agency, and applied for an Allstate auto policy with respect to the new Mini Cooper. Plaintiffs allege that they informed Lee that O'Keefe had a suspended license and that he would be taking tests to have the driver's license suspension lifted. (Compl. ¶25). Lee informed Plaintiffs that O'Keefe would be listed as an excluded driver but would be added as soon as his driver's license was reinstated.

"Prior to February 24, 2011, . . . Christopher learned that the suspension on his driver's license had been lifted." (Compl. ¶37). Plaintiff alleges that he made two telephone calls to Lee's office "before February 24, 2011 to advise of the lifting of the suspension on his driver's license." (Compl. ¶38). On both occasions, Lee was unavailable and O'Keefe allegedly spoke with Matthew Bevan ("Bevan"), also a licensed casualty broker-agent, and informed him that the suspension on his driver's license had been lifted and that the license was active. Bevan allegedly told O'Keefe "that so long as the Department of Motor Vehicles ("DMV") had confirmed reinstatement, Christopher was 'good to go,' no longer excluded from the policy, and would be added as the primary driver of the Mini Cooper on the Allstate policy." (Compl. ¶44).

On February 24, 2011, O'keefe was involved in a serious accident with other vehicles, resulting in the Mini Cooper's complete and total loss. After the accident, O'Keefe called Lee and reported the loss. Lee allegedly told O'Keefe that she had

1  confirmed with Bevan that he "had previously called and advised the office about the
2  lifting of the suspension on his driver's license." (Compl. ¶52). Lee requested a DMV
3  history report reflecting the status of his license. On February 25, 2011, O'Keefe
4  allegedly provided the DMV report to Lee. At no time prior to the accident did Allstate
5  or its agents request any documentation "to have Christopher as the primary driver of
6  the Mini Cooper." (Compl. ¶58).

7  On March 31, 2011, Allstate denied Plaintiffs' insurance claim on the ground
8  that O'Keefe was an excluded driver at the time of the February 24, 2011 accident.
9  (Compl. 63). Plaintiffs contested the denial of coverage and informed Allstate that (1)
10 Lee represented that O'Keefe would be made the primary driver as soon as his driver's
11 license was reinstated, (2) Bevan told Plaintiffs on two occasions before the accident
12 that O'Keefe would be listed as the primary driver, and (3) the suspension of O'Keefe's
13 drivers license ended on February 24, 2011. On June 9, 2011, Allstate again denied the
14 claim. (Compl. ¶70).

15 On July 15, 2014, the court granted Allstate's motion to dismiss the breach of
16 the implied covenant of good faith and fair dealing claim with leave to amend.
17 Plaintiffs did not file an amended complaint. In an opposed motion, Allstate moves for
18 summary judgment on whether O'Keefe is entitled to any benefits under the policy.

19 **DISCUSSION**
20 **Legal Standards**

21 A motion for summary judgment shall be granted where "there is no genuine
22 issue as to any material fact and . . . the moving party is entitled to judgment as a matter
23 of law." FED. R. CIV. P. 56(c); Prison Legal News v. Lehman, 397 F.3d 692, 698 (9th
24 Cir. 2005). The moving party bears the initial burden of informing the court of the
25 basis for its motion and identifying those portions of the file which it believes
26 demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett,
27 477 U.S. 317, 323 (1986). There is "no express or implied requirement in Rule 56 that
28 the moving party support its motion with affidavits or other similar materials negating

1  the opponent's claim." Id. (emphasis in original). The opposing party cannot rest on
2  the mere allegations or denials of a pleading, but must "go beyond the pleadings and
3  by [the party's] own affidavits, or by the 'depositions, answers to interrogatories, and
4  admissions on file' designate 'specific facts showing that there is a genuine issue for
5  trial.'" Id. at 324 (citation omitted). The opposing party also may not rely solely on
6  conclusory allegations unsupported by factual data. Taylor v. List, 880 F.2d 1040,
7  1045 (9th Cir. 1989).
8       The court must examine the evidence in the light most favorable to the non-
9  moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Any doubt
10 as to the existence of any issue of material fact requires denial of the motion. Anderson
11 v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). On a motion for summary judgment,
12 when "'the moving party bears the burden of proof at trial, it must come forward with
13 evidence which would entitle it to a directed verdict if the evidence were
14 uncontroverted at trial.'" Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992)
15 (emphasis in original) (quoting International Shortstop, Inc. v. Rally's, Inc., 939 F.2d
16 1257, 1264-65 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992)).
17 **The Motion**
18      Allstate comes forward with substantial evidence to show that O'Keefe was an
19 excluded driver at the time of the accident on February 24, 2011. O'Keefe is identified
20 as an excluded driver on the declarations page. (Exh. 2 p.7). Allstate policy requires
21 that excluded drivers must submit written proof of reinstatement before insuring the
22 driver. (Exh. 1, p.9; Davis Decl. ¶6; Lee Decl. ¶6). In 2011, Allstate did not have
23 direct access to the DMV's database. In selling or renewing policies, Allstate obtains
24 DMV driving record from third parties. Until the database is updated, "the only way
25 to prove the license has been reinstated is by obtaining documentation directly from a
26 DMV branch location, which the operator would be obligated to do." (Davis Decl. ¶9).
27      On December 13, 2010, Plaintiffs met with Lee at the Ryan Hartwigsen Agency,
28 an insurance agency for Allstate. (Lee Decl. ¶2). Lee informed O'Keefe that he would

1  be an excluded driver until he obtained written proof of reinstatement from the DMV.
2  (Lee Decl. ¶6). O'Keefe was instructed to obtain a driver's license history report (also
3  known as an "H6 Print") and send it to her. She also informed O'Keefe that he "would
4  be added to the policy with coverage effective the date it received written proof.
5  O'Keefe communicated that he understood." Id. Lee also declares that, prior to
6  February 25, 2011, she never received a request to add O'Keefe to the policy nor does
7  she recall receiving any messages from him prior to this date. (Lee Decl. ¶8). She, like
8  Bevan, never would have told O'Keefe that the policy could be modified based upon
9  an oral representation because "Allstate requires written proof of reinstatement before
10 adding a driver whose license was previously suspended." (Lee Decl. ¶16; Bevan Decl.
11 ¶11).

12  Ultimately, Allstate did not receive documentation that O'Keefe's license had
13 been reinstated until, at the earliest, February 25, 2011 at 5:00p.m. (Lee Decl. ¶11).
14 The court notes that O'Keefe did not fully cooperate with Allstate in obtaining the
15 driving history report. (Elizburu Decl. ¶¶16, 19, 20-23). Allstate spoke with two
16 different DMV representatives who confirmed that O'Keefe's license was reinstated
17 on February 24, 2011, the day of the accident. Further, a letter from O'Keefe confirms
18 that the license was reinstated on February 24, 2011. (Exh. 18).

19  The O'Keefe declaration rebuts Allstate's evidence in two material respects.
20 First, he declares that at the December 13, 2010, meeting with Lee, she informed him
21 that he "needed to complete the tests with the DMV and call the agency after the DMV
22 told me my driving privileges were restored." (O'Keefe Decl. ¶15). O'Keefe believed
23 that he only had to call Allstate and he would be insured under the policy. On this
24 point, O'Keefe's evidence contradicts the testimony of Lee and accordingly creates a
25 genuine issue of material fact not appropriate for resolution on a motion for summary
26 judgment. This evidence, however, is not dispositive on whether O'Keefe was an
27 excluded driver on the date of the accident.
28  The second disputed fact concerns whether, prior to the accident, his status as

an excluded driver was removed because O'Keefe provided telephonic notice to Allstate of the reinstatement of his driver's license and Bevan informed him that he "was good to go." At some unidentified time between February 16, 2010, the date O'Keefe took the DMV road test, and February 24, 2010, O'Keefe learned, from an unidentified representative with the DMV, that he passed the DMV road test. He also made two telephone calls to speak with Lee. Lee was unavailable and O'Keefe spoke with Bevan. On the first call, O'Keefe informed Bevan that he was an excluded driver, that Lee had informed him to call when his driving privileges were restored, and that he wanted to confirm that he was covered under the Allstate policy. (O'Keefe Decl. 23). Bevan told O'Keefe that he would leave a message for Lee. On the second call, Bevan told O'Keefe that "so long as the DMV had said my driving privileges had been restored, I was 'good to go' and could drive under the Allstate policy." Id. Joni O'Keefe declares that, based upon the conversation between O'Keefe and Bevan, on February 24, 2011, the O'Keefes canceled the automobile insurance policy that she had with Progressive insurance because the Allstate policy covered the O'Keefes and the Allstate policy was cheaper. (Joni O'Keefe Decl. ¶15).

Additional proffered evidence that the O'Keefes spoke with Bevan consists of a speaker phone telephone conversation the O'Keefes had with Lee on February 25, 2011. During this conversation with Lee, they informed her of O'Keefe's two conversations with Bevan about one week earlier. When the O'Keefes informed Lee of the conversations, the O'Keefes were placed on hold while Lee spoke with Bevan. "Agent Lee then put us on hold. When she got back on the line, agent Lee told us she had spoken to agent Bevan and he had confirmed the prior phone calls with Christopher. Agent Lee told us that she still need us to go the DMV, get a form, and fax it to her by the close of business that day. Agent Lee said that if she received the form, she would attempt to have Allstate 'back date' something." (Joni O'Keefe Decl. ¶18).

In refuting the evidence submitted by Plaintiffs, Allstate argues that there is no

- 6 -

13cv0744

evidence that O'Keefe ever spoke with anyone at Allstate before February 25, 2011. Lee declares that she never spoke with the O'Keefes and Bevan declares that he does "not recall speaking with Mr. O'Keefe before his February 24, 2011 accident. I believe I spoke with him once shortly after his accident when he called to speak with agent" Lee. (Bevan Decl. ¶6). The recorded conversations between Elizburu, the claims adjuster, and Lee and Bevan are consistent with this testimony., (Elizburu Decl. ¶¶12-13). Allstate also identifies that O'Keefe testified he left a voice mail message on Lee's voice mail at a time when no one at the agency had an individual voice mail. (Exh. 28 at 170:11-17; Lee Decl. ¶15; Bevan Decl. ¶9). The agency's claim log also does not identify that these telephone calls occurred. Furthermore, Allstate submits that the telephone records subpoenaed for O'Keefe's cellular phone, O'Keefe's wife's cellular phone, Plaintiffs' home phone, and another number registered to O'Keefe conclusively show that no telephone calls between Plaintiffs and the Ryan Hartwigsen Agency occurred prior to February 25, 2014. (Mackaness Decl. ¶7).

    Allstate concludes that the absence of a telephonic record is conclusive on whether O'Keefe ever made the disputed telephone calls. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). In Scott, the plaintiff commenced a 42 U.S.C. §1983 action against a police officer for injuries sustained when the police officer rammed his car from behind. The plaintiff refused to stop and fled at a high rate of speed with the police officer in pursuit. The plaintiff claimed that during the pursuit "there was little, if any, actual threat to pedestrians or other motorists, as roads were mostly empty and [plaintiff] remained in control of his vehicle." The district court, as well as the Court of Appeals, concluded that this evidence created a genuine issue of material fact on summary judgment notwithstanding the existence of a videotape that recorded the entire incident. The videotape showed the plaintiff racing down a narrow two-lane

1 road swerving around more than a dozen cars, crossing the double-yellow line, and
2 forcing cars traveling in both directions to move onto the shoulder to avoid being hit
3 by Plaintiff. The plaintiff also ran multiple red lights and traveled in a left-turn-only
4 lane. It was in this context that the Supreme Court stated that plaintiff's driving, as
5 depicted on the videotape, clearly endangered human life and "so utterly discredited"
6 plaintiff's version of the facts such that no reasonable jury could have believed the
7 plaintiff. Id. at 381. In reaching this conclusion, the Supreme Court noted that "[t]here
8 are no allegations or indications that this videotape was doctored or altered in any way,
9 nor any contention that what it depicts differs from what actually happened." Id. at
10 378.[1]

11 Although a close call at this juncture, the court finds that the telephone records,
12 without evidence of reliability such as a declaration attesting to the accuracy of the
13 telephone records, do not conclusively demonstrate that O'Keefe never placed the two
14 disputed telephone calls in the week prior to the accident. Unlike a videotape that
15 reliably depicts what is captured by the camera, there is no showing by either party that
16 those telephone billing records captured all calls made and received. Without this
17 additional evidence, the court declines to find the telephone records conclusively show
18 that O'Keefe never made the disputed telephone calls.[2]

19 In sum, in light of the entirety of the evidentiary record submitted to the court,
20 the court concludes that genuine issues of material fact preclude a finding as a matter

21 / / /
22 / / /
23 / / /
24 / / /

---

[1] Plaintiff objects to the telephone records as inadmissible hearsay and lack foundation. The court rejects these objections because telephone records are a classic example of evidence that is admissible as business records. See United States v. Linn, 880 F.2d 209, 216 (9th Cir. 1989).

[2] The court rejects Plaintiff's self-serving and speculative argument that he may have used a different telephone to make the telephone calls.

of law that O'Keefe was an excluded driver at the time of the February 24, 2011, accident.

**IT IS SO ORDERED.**

DATED: December 17, 2014

Hon. Jeffrey T. Miller
United States District Judge

cc: All parties